ELLIS, Judge.
The plaintiffs, who were the sisters and sole and, only heirs of William Stevens, who was struck and killed on October 22, 1949 around 8 A. M. while crossing a paved highway known as the Plank Road, at a point approximately two miles south of Clinton, Louisiana, in front of a night club known as “The Spot” by an automobile driven by the defendant’s minor daughter, have instituted this suit in which they are asking $5,000 each for mental pain, anguish, and loss of companionship of their deceased brother as the result of his death.
An exception of no right or cause of action was filed to the petition which was *103 overruled and which is not being urged.on appeal.
The defendant’s answer was a general denial and an alternative plea of con-tributqry negligence on the part of the deceased in bar of any recovery by the plaintiffs.
The judge of the lower court with oral reasons rendered judgment in favor of the defendant and against the plaintiffs dismissing the suit at their costs. It is from this judgment that the plaintiffs have appealed.
The defendants have filed a motion to dismiss this appeal on the ground that the “order of appeal herein was entered on March 14, 1950 which was an order of an appeal from an unsigned judgment” and, therefore, “there has been and is no legal order of appeal or legal order granting an appeal herein.”
The record shows that this case was tried on March 14, 1950 and resulted in the rendition of a judgment on that date dismissing plaintiff’s suit, however, no formal judgment was then signed. On the same day an order of appeal was granted to the plaintiffs, returnable Monday, April 24, 1950, upon the furnishing of bond in the amount of $250. Formal judgment was rendered and signed on the 17th day of April, 1950, however, plaintiffs furnished their bond which was signed on the 12th day of April, 1950, apparently five days prior to the signing of the judgment.
Counsel for the defendant relies upon the following cases: Vivian State Bank v. Holcomb et al., 13 La.App. 169, 127 So. 410, and cases cited therein; Mitchell v. Shreveport Creosoting Co., 123 La. 957, 49 So. 655; Succession of Savoie, 195 La. 433, 196 So. 923; South Shore Railroad Co. v. Y. & M.. V. Railroad Co., 176 So. 678.
These cases are not applicable for in each either there was no signed judgment or no final judgment, whereas in the present case we have a final and a signed judgment.
The same situation or facts were presented to the Orleans Court of Appeal as we have in the present case in Mossler Acceptance Company v. Moliere, 181 So. 228, 230, and it held, with Justice McCaleb as organ of the Court, that:
“The fact that the judgment was signed and the fact that it appears -in the record before us as a final decree, we think, has the effect of curing the prematurity of the application and order of appeal. The underlying purpose of the provisions, in the Code of Practice, that the judge must allow three days to elapse before signing judgments rendered by him, is to accord to the unsuccessful litigant a reasonable timé within'which to apply for a new trial. It has many times been held that the premature signing of the judgment does not forfeit the rights of the party cast to make timely application for a new trial. Hence, the most that can be said, with respect to the premature action of the appellant in this case, is that, by applying for the appeal on the day after the judgment was rendered, he abandoned the right granted him by law to apply for a new trial.”
“There can be no doubt that, by virtue of the overwhelming authorities herein-above cited, if the signed judgment was absent from this transcript, the appeal would have to be dismissed. But the judgment as rendered and signed is found in the record and we see no reason to preclude the appellant from having his case heard in this court upon its merits.”
“For the foregoing reasons, the motion to dismiss the appeal is denied.”
Again, in Erie v. Primos, La.App., 37 So.2d 832, 833, the Orleans Court of Appeal stated:
“However, an appeal from a judgment which is not signed until after the appeal is taken, but which is signed before the transcript is returnable to the appellate court, and which actually appears in the transcript, is not subject to dismissal because of the appellant’s premature action in appealing from the unsigned judgment. The fact that the judgment was signed, plus the fact that it appears in the record before us as a final decree, has the effect of curing the prematurity of the application for and the order of appeal, and the most that can be said is that by applying for the appeal before the judgment was signed, *104 appellant abandoned the right accorded him by law to apply for' a new trial. See Mossler Acceptance Co. v. Moliere, La. App., 181 So. 228, and authorities therein cited.
“The motion to dismiss is denied.”
Counsel for defendant relies upon Brock v. Police Jury of Rapides Parish, 198 La. 787, 4 So.2d 829, 833, as cited by the Supreme Court, in which it was stated: “According to the record before us the judge had not signed the judgment which he had rendered when the plaintiffs asked for and were granted an appeal. We assume that the judgment was signed bef ore the appellants filed their appeal bond; otherwise the appeal will Jmve to be dismissed, even though the appellees maty not move to dismiss it. There is no right of appeal from a final judgment until it is signed. Succession of Savoie, 195 La. 433, 196 So. 923.” (Emphasis added.)
The emphasized portion of the above statement was obiter dictum as the question in that case was the granting to plaintiff of a suspensive appeal from a judgment denying an injunction.
We believe that under the authority of Mossier Acceptance Company v. Moliere, supra, and Erie v. Primos, supra, that the motion to dismiss the appeal should be and it is hereby denied.
At about 7:30 or 8:00 A. M. Miss Beatrice Gross had driven her brother’s car to Clinton, Louisiana from the family home for the purpose of taking a friend who had stayed over night to her work, and was returning to her home along U. S. Highway 36 which runs generally north and south'. When she had reached a point near the night club known as “The Spot” and while traveling approximately 30 miles per hour she saw the deceased, William Stevens, on the highway with a bucket in his hand walking from her left hand side of the highway straight across to her right hand side with his head down, looking neither right nor left, and when she saw him he was “almost to the middle of the black line * * *.” She immediately blew her horn and applied the brakes but the deceased had advanced' across the center line when the automobile struck him, causing injuries from which he died some minutes' later. -There was no eyewitness other than Miss Gross but it is established that there were skid marks from her car a distance of 60 feet. Approximately 20 feet from the beginning of the skid marks there was a “bobble” in this mark,, and near- this “bobble” was the bucket which the deceased had in his hand, and it is believed that it was at this point that the car struck the deceased.
It is shown that the age of the deceased was 80 years , and that on quite a number of other occasions he had almost been struck by drivers of other automobiles while walking, in the streets of - Clinton or along the highway. It is not shown whether his hearing or eyesight was bad but it is shown that while Miss Gross knew the deceased, she did not know of any such infirmity.
While counsel for plaintiffs cites a number of authorities as to the rights of a pedestrian, there is no need to discuss them nor to go into details for the deceased was ' contributorily negligent as it was shown that' the highway at this point is straight for one-half mile and without any obstruction,' and visibility on thé morning of the accident, evbn though' there'was a slight fog, was good and a person walking on' the highway could see and could be seen for a distance'of 500 to 600 feet, and for the deceased to have walked along the highway without looking with his head lowered, directly into the path of an oncoming car was gross negligence, however, under the doctrine of the last clear chance a motorist is not relieved of liability even ■ though the injured person is guilty of contributory negligence where it appears that the driver of the automobile had a chance to avoid the accident after the 'discovery of the peril of the injured person or where it ¡appears that the motorist could have discovered the peril of the injured person in time to avoid the injury if he had been keeping the proper lookout. Rottman v. Beverly et al., 183 La. 947, 165 So. 153. Jackson v. Cook, 189 La. 860, 181 So. 195. The doctrine of last clear chance applies where the perilous position of the *105 one injured was not discovered by the operator of the car in time to avert the injury, hut where lack of knowledge -in that respect was due to inattention and failure to exercise due diligence. In Iglesias v. Campbell, La.App., 175 So. 145, 148 (13, 14) it was stated: “It is an inexorable rule of law that the operator of an automobile is held to see that which he should have seen and which, of course, may be seen and observed by human eyesight; and this being true, we can see no sound reason for holding that the operator must actually see the injured person in time to avoid colliding with him in order that the doctrine of the last clear chance may be correctly applied.”
Under the facts, there was no reason why Miss Gross should not have seen the old man when he started, to walk across the highway. The deceased had his head lowered when he started across the highway as well as at the time Miss Gross saw him near the center line just prior to striking him. At the moment the old man stárted to walk across the highway,- Miss Gross''was quite a distance up the highway with an unobstructed view for one-half' mile, and should have seen the deceased and could have easily brought her car to a- stop' or' slackened her speed so as to have avoided the accident.
Counsel for the defendant contends that had Miss Gross seen the deceased as he started to cross the . highway until he reached the approximate center of the highway that she could not have observed at that time that the deceased was in imminent peril. He relies upon Fontenot v. Freudenstein, La.App., 199 So. 677, 680, in which a 12 year old boy rancor walked into the street and apparently right' into the side of an automobile. The driver did not see him and at the time did not even know she had struck the boy. Although the Court stated that each could have seen the other, it further found that there was nothing to show that there was anything about the appearance of the 12 year old boy to indicate that he was in any peril. “He must have been facing towards the approaching car as he was walking. * * * Even had Miss Freudenstein been looking and even had she seen Fontenot, there is nothing to .show that she should, have realized that he was not aware of the approach of her car.”
The present case is distinguishable' in that the deceased walked straight across the highway with his head lowered and without looking, for certainly had he looked and seen the automobile he would not have walked directly in front of it. The moment Miss Gross .saw the deceased she realized he was in immediate peril, and it can be concluded from the facts in this case that had she seen him at the moment he started to cross the highway his peril would have been apparent to her and she could easily have avoided the accident. The liability is established.
As to the quantum of damages, it is shown that the two- plaintiffs, Mrs. F. M. Moore, who was a resident, of Hammond, Louisiana, and Mrs. Katie Cox, who lived in Clinton, Louisiana, were 73 and 78 years of age, respectively.. It is shown that, although Mrs. Cox lived in Clinton her brother did not stay with -her and apparently she did not see him very often. He had at one time stayed at her house but there is some testimony to the effect that her son had caused him to leave. Regardless of the truth or not- of this testimony, it is apparent that she and her brother were not very dose nor did she take any great interest in the deceased and his -affairs. It is also shown that Mrs. Moore, who lived in Hammond, did not see her brother often nor carry on any regular correspondence with him. There was no deep attachment shown and certainly very little companionship between.- the deceased and his two sisters.
We believe that an award of $125 to each of the plaintiffs, • in view of their ages as well as the age of the decedent, and other facts in this case, would be proper.
It is, therefore, ordered that the judgment of the District Court be reversed and that there be judgment in favor of the plaintiffs and against the defendant in the amount of $125 to each with legal interest thereon from judicial demand until paid and all costs.