84 So.2d 103 (1955)
Ellen JACKSON
v.
Joseph RATLIFF et al.
No. 20431.
Court of Appeal of Louisiana, Orleans.
May 23, 1955.
On Rehearing January 3, 1956.
Girard J. Fernandez, New Orleans, for defendants-appellants.
McGiehan, Bagot & Phillips, New Orleans, for plaintiff-appellee.
*104 HENRY B. CURTIS, Judge ad hoc.
The main question in this case is the responsibility of the father for the wrongful act of a minor unemancipated child who was not living with the parent at the time of the commission of the tort.
In the alternative, we are called upon to decide if there is any liability on the part of the maternal grandmother in whose custody and control the minor child had been placed.
The facts are not disputed. Plaintiff is Ellen Jackson, a colored woman, aged 54, who was attacked with intent to rape by an eighteen year old Negro boy, Joseph Ratliff, Jr. Defendants are Joseph Ratliff, Sr., the father, and Alice Harrison, the maternal grandmother, with whom the boy was living at the time of the assault.
There was judgment in favor of plaintiff for $500 against Joseph Ratliff, Sr., and a further judgment dismissing her suit against Alice Harrison.
Defendant Ratliff appealed from the judgment against him, and plaintiff appealed from the judgment dismissing her suit against Alice Harrison. In her brief in this Court plaintiff by way of answer to the appeal of Joseph Ratliff, Sr., prayed for an increase in the award.
In the view which we take of this case, it is not necessary for us to consider whether this was a valid answer to the appeal or even to consider the question of quantum at all because in our opinion neither the father nor the maternal grandmother is liable for the wrongful action of Joseph Ratliff, Jr.
The question of the liability of the grandmother can be easily decided. There is nothing in our Civil Code or statutory law which imposes such liability on the grandmother unless she were the tutrix of the minor which was not here the case.
On the question of the father's liability, Article 2318 of the LSA-Civil Code reads:
"The father, or after his decease, the mother, are responsible for the damage occasioned by their minor or unemancipated children, residing with them, or placed by them under the care of other persons, reserving to them recourse against those persons.
"The same responsibility attaches to the tutors of minors."
In the case of Toca v. Rojas, 152 La. 317, 93 So. 108, 111, the Supreme Court said:
"Of course the parental authority may be suspended and interrupted, and even taken away altogether by the force and effect of the law. As, for instance, when the state, in the exercise of its sovereign right and power, takes the child away from the parents for the betterment of its condition; when by judgment of court the child is given over into the custody and care of another; where the minor is called into the service of his state or his country, or is summoned into a posse comitatus. In all such instances, the paternal authority is interrupted or terminated, and likewise the paternal responsibility.
"`When the law, ex propria vigore, destroys or suspends the paternal authority over the minor, it, at the same time, destroys or suspends the paternal responsibility.' Coats v. Roberts, 35 La.Ann. 891."
The facts in this case are that shortly after the birth of Joseph Ratliff, Jr., the parents separated and the mother went to stay with the grandmother taking the child with her. The child remained with his grandmother and was living with her at the time of the offense. In 1942, the father, Joseph Ratliff, Sr., sued for divorce alleging two years separation from his wife. In his petition he made the following allegation concerning the child:
"That there is one child issue of the marriage named Joseph Ratliff, Jr., now aged 8 years, the child is now and has been in the custody and control of Alice Jackson, its grandmother; that he asks the Court to give the custody and control to the grandmother, who has had the child for many years."
*105 It thus appears that the minor was neither living with his father at the time of the offense nor had he been placed by him under the care of another person, since the evidence shows that the child's mother took him to live with the grandmother. The decree in the divorce suit provided that the minor child should be placed in the custody and control of his grandmother.
The father's petition in the divorce suit merely recognized that fact and asked the Court to confirm same in its judgment. Once the Court so decreed, the father lost whatever right of custody or control he might have had over the child, at least unless and until the decree awarding the custody to the grandmother was set aside.
In our opinion the father's parental authority was taken away by the judgment of court which gave the custody and control of the minor to the grandmother. Toca v. Rojas, supra.
The case of La Rue v. Adam, La.App., 59 So.2d 839 is not in conflict with this holding because there the father had voluntarily placed his minor children in the care of his oldest daughter and this Court held that the parental authority was not thereby interrupted or lost, the person in whose hands the children were placed being merely the father's agent. In this case it cannot be said that the father placed the child under the care of the grandmother. At the most he merely recognized that she did have such custody and asked the Court to confirm same. Certainly after the Court had rendered such an order, the father could not have exercised any control whatsoever unless and until the Court's order was set aside.
The plight of the innocent plaintiff of this attack is distressing, but, as was said by this Court in Maloncy v. Goelz, 12 La. App. 31, 124 So. 606, 607:
"The question of the liability of the father who is not present has been many times discussed by our courts, which have always held that the codal provision, making the parent liable for the torts of the minor, is in derogation of common right, and therefore should be strictly construed. * * *"
We therefore conclude that the judgment against Joseph Ratliff, Sr., should be reversed.
It is therefore ordered, adjudged and decreed that the judgment appealed from in favor of plaintiff and against defendant, Joseph Ratliff, Sr., be and the same is reversed and set aside and plaintiff's suit is dismissed at her cost.
It is further ordered, adjudged and decreed that the judgment in favor of Alice Harrison be affirmed.
Affirmed in part and reversed in part.
REGAN, J., dissents with written opinion.
REGAN, Judge (dissenting).
I respectfully dissent from that part of the judgment dismissing the plaintiff's suit against the father of the minor, Joseph Ratliff, Sr.
The facts are simple and are conceded in the majority opinion to be as hereinafter related.
Plaintiff, Ellen Jackson, a colored woman, fifty-four years of age, was viciously and without provocation attacked by Joseph Ratliff, Jr., an eighteen year old negro youth, who endeavored to rape her. It would serve no useful purpose to reiterate the gruesome details thereof. The defendants are the father, Joseph Ratliff, Sr., and the maternal grandmother, Alice Jackson Harrison, with whom the minor was residing, at the request of and for the convenience of the father, when the assault upon the plaintiff occurred. The lower court was of the opinion that the father was responsible for the damage inflicted upon the plaintiff by his minor child and dismissed her suit against the grandmother. This Court has reversed the judgment which plaintiff obtained against the father of the minor.
Initially at "common law" the parent was not responsible for the tort of the child *106 merely because of the relationshiphowever, by virtue of circuitous reasoning the modern trend of even the common law is to hold the parent responsible. Bassett v. Riley, 1908, 131 Mo.App. 676, 111 S.W. 596; Smith v. Davenport, 1891, 45 Kan. 423, 25 P. 851, 11 L.R.A. 429; Souza v. Irome, 1914, 219 Mass. 273, 106 N.E. 998; Johnson v. Glidden, 1898, 11 S.D. 237, 76 N.W. 933. Moon v. Towers, 8 C.B.(n.s.) 611, 141 Eng. Rep.R. 1306 (1860); Davis v. Gavalas, 1927, 37 Ga.App. 242, 139 S.E. 577.
The civil law, the social philosophy of which, so saith the legal sages is at least one hundred years more advanced than the common law, has always held the father responsible for the damage occasioned by his minor children residing with him. Art. 1384 French Civil Code; Article 1903 Spanish Civil Code. Also see 20 Laurent, Principes De Droit Civil Francias, de la Responsabilite (5th Ed.1893) n° 550 p. 588, n° 553 p. 591; 15 Baudry-Lacantinerie et Barde, Traite De Droit Civil, Des Obligations (3rd Ed. 1908) n° 2898 p. 595, 5 T.L.R. 644.
In Louisiana the liability of the father for the tortious acts of his minor child is specifically imposed by virtue of LSA-C.C. art. 2318 which reads:
"The father, or after his decease, the mother, are responsible for the damage occasioned by their minor or unemancipated children, residing with them, or placed by them under the care of other persons, reserving to them recourse against those persons. * * *"
It is, I believe, conceded that ordinarily this article of the code would encompass the facts herein and, in consequence thereof, the judgment to be reached by this courthowever, the majority opinion, in effect, states that an exception to the general civil law rule enunciated in Art. 2318 is posed for our consideration in view of the fact that "the father's parental authority was taken away by the judgment of court which gave the custody and control of the minor to the grandmother" and dictum extracted from the case of Toca v. Rojas, 152 La. 317, 93 So. 108, 111, is cited in support thereof. It reads:
"Of course the parental authority may be suspended and interrupted, and even taken away altogether by the force and effect of the law. As, for instance, when the state, in the exercise of its sovereign right and power, takes the child away from the parents for the betterment of its condition; when by judgment of court the child is given over into the custody and care of another; where the minor is called into service of his state or his country, or is summoned into a posse comitatus. In all such instances, the paternal authority is interrupted or terminated, and likewise the paternal responsibility.
"`When the law, ex proprio vigore, destroys or suspends the paternal authority over the minor, it, at the same time, destroys or suspends the paternal responsibility.' Coats v. Roberts, 35 La.Ann. 891."
I do not dispute the validity of the rationale of the foregoing pronouncement by the Supreme Court, I am simply of the opinion that the exceptions to the general rule enumerated therein may not be applied to that kind of judgment which the majority opinion insists annihilated the parental authority of Joseph Ratliff, Sr.
The record of the divorce, which was introduced in evidence, discloses that Joseph Ratliff, Sr. and Alice Jackson were married in 1934 and shortly thereafter a child, Joseph Ratliff, Jr., was born of this marriage. When the child was very young the couple separated and the mother took the child with her to the home of his grandmother, Alice Jackson Harrison. In 1942 Joseph Ratliff, Sr., instituted a suit against his wife, alleging that they had been living apart for more than two years; that one child was born of the marriage, who was then eight years of age and who resided with its grandmother; he then requested the court "to give the custody and control to the grandmother, who has had the child for many years." The petition for divorce was served in person on Alice Jackson, who failed to respond thereto and a judgment by default was obtained by Ratliff, which, *107 incidentally and perfunctorily, as per his request, awarded the custory of the minor child to its grandmother.
In my opinion there exists a vast distinction between the foregoing pro forma judgment, wherein the court, having no cause or reason at the time to evaluate the welfare or status of the childand which was used by Ratliff, in contemplation of remarriage for his convenience and expediencyto voluntarily place the child in the custody of its grandmother, obviously in order to avoid the obligations incident to and imposed by law upon parenthood, * * * and that type of judgment wherein the welfare of the child is seriously evaluated by the court and the parental authority is then suspended, interrupted or even taken away altogether by the force and effect of the law or, as was more succinctly stated in Toca v. Rojas, supra, "when the state, in the exercise of its sovereign right and power, takes the child away from the parents for the betterment of its condition." If that was the nature of the judgment relied upon by the majority to create an exception to the general civil rule of law enunciated in Article 2318, I may be persuaded to alter my conclusions, however, as related hereinabove, in my opinion a vast distinction exists between the effect of these judgments upon the facts of this case and, therefore, I am motivated to file this dissent.
I have observed heretofore that the majority opinion relies upon dictum extracted from the Toca case to support its conclusionsas paradoxical as it may appear, I too, find dicta therein which, in my opinion, is in accord with the views herein expressed, for example:
"Birth gives rise to paternal control and authority over the child, and, as was tersely stated in Coats v. Roberts, 35 La.Ann. 891:
"`Paternal responsibility is the consequence and offspring of the paternal authority.'
"The father may delegate a part of his authority over his minor children to teachers, schoolmasters and others to whom he may intrust them for their educationsuch as the power of restraint and correctionbut he cannot permanently divest himself of any portion of the paternal authority, by contract or otherwise. C.C. 220; Gates v. Renfroe, 7 La.Ann. 569. He cannot send his minor children away from the paternal home unless he places them in the care of others, in which event he remains responsible for their acts. Nor can he refuse to support and maintain them without subjecting himself to a criminal prosecution."
The ratio decidendi or the precise holding of the Toca case turned upon a point of pleading and the Court, in this connection, expressed the opinion that plaintiff's petition set forth a cause of action since it was not necessary for him to allege that the defendant's minor son was "residing with him" and, accordingly, overruled the exception of no cause or right of action. The Toca case is authority for nothing more.
It is my opinion that this case poses an analogous or essentially the same problem which we considered in La Rue v. Adam, La.App.1952, 59 So.2d 839, 841, wherein we said:
"In view of the fact that the father upon his remarriage, for reasons of his own, wished to live alone with his second wife, and established a separate home for his children with his eldest daughter in the role of mother to the other children, brings them within the purview of Article 2318, LSA-C.C., which imposes upon a father responsibility for his minor children placed by him under the care of another."
Joseph Ratliff, Sr., in contemplation of remarriage did exactly what Adam did in the foregoing case, except that Ratliff for his benefit and convenience interposed the arm of the court to accomplish this objective of placing the minor in the care of its grandmother.
How is the concept of "justice" reconciled with the divergent results reached in each of these cases? Is it predicated on the *108 fallacious premise that Ratliff was more clever than Adams in relieving himself of parental responsibility a fortiori judgment for Ratliff? Or is it predicated upon the hypothesis that even in the interest of justice, it is not permissible for an appellate court to evaluate the meaning, intent, implication or "reason why" a lower court rendered a particular judgment and the over all effect thereof under exceptional circumstances?
Lord Bowen, one of the ablest and most enlightened of English Judges, 68 years ago remarked:
"It may be asserted without fear of contradiction that it is not possible in the year 1887 for an honest litigant in Her Majesty's Supreme Court to be defeated by any mere technicality * * *. The law has ceased to be a scientific game that may be won or lost by playing some particular move."
Law is justice and this conclusion is founded upon the indisputable fact that the final cause of law is the welfare of society. The decision which misses this aim cannot permanently justify its existence. I am convinced that the court's opinion actually recognized its failure to give this fundamental concept of the law its full weight when the author thereof apologetically asserted "The plight of the innocent plaintiff of this attack is distressing, but * * *." Nonetheless the majority still felt compelled to relieve Joseph Ratliff, Sr., from the liability which the lower court had imposed upon him for the vicious rape attempted by his minor son. In this connection, Justice Cardozo once very poignantly observed:
"Judges march at times to pitiless conclusions under the prod of a remorseless logic which is supposed to leave them no alternative. They deplore the sacrificial rite. They perform it, none the less, with averted gaze, convinced as they plunge the knife that they obey the bidding of their office. The victim is offered up to the gods of jurisprudence on the alter of regularity."
I am of the opinion that the judgment of the lower court was correct and should have been affirmed.

On Rehearing
JANVIER, Judge.
In argument on rehearing counsel for plaintiff, in contending that there is liability in the father, characterized as obiter dicta certain statements made by the Supreme Court in Toca v. Rojas, 152 La. 317, 93 So. 108, 111, and referred particularly to the statement to the effect that parental authority may be taken away by judgment of court when, for the betterment of the child's condition, it is given over into the care and custody of another.
Counsel say that that statement was not necessary to the decision, since all that was involved there was the question of whether a plaintiff, who had been damaged by the tort of a minor and who brought suit against the father of the minor, should have alleged that the minor was residing with the defendant parent.
It is true that, since the matter was before the Court on an exception of no cause of action based on the contention that it should have been alleged that the minor child was living with the defendant parent, all that was necessary to the decision was a statement that such an allegation was not necessary.
Whether the statement was necessary to that decision or not it seems to us that what was said is properly based on the wording of Article 2318 of our LSA-Civil Code.
As a necessary prerequisite to the liability of a parent in such case the child at the time of the commission of the offense must reside with the parent.
All that was held in that case was that it must be presumed that a minor child is residing with the parent and that this presumption *109 continues until the status of the child is "changed in some manner provided by law." The Court said that among the methods by which that status might be changed is the one relied on here"when the state, in the exercise of its sovereign right and power, takes the child away from the parents for the betterment of its condition".
Counsel for plaintiff in oral argument conceded that the effect contended for by defendant would result in any case in which there was an actual contest over the custody of the minor and the Court, after hearing the controversy, should take the custody away from the parent and give it to someone else. But they say that here there was no controversy and that the custody of the child was taken away from the father at his own request and that therefore the father was merely using the Court to relieve himself of responsibility and was thus attempting to do indirectly what he could not have done without the assistance of the Court.
This argument overlooks the fact that it must be assumed that the District Judge, in taking the custody away from the father, did his full duty and did not do so until he had investigated and had concluded that it was for the betterment of the condition of the child that its custody be taken from the father and given to someone else. To quote again from the Toca decision, we think that the State, "in the exercise of its sovereign right and power," took the child away from the father "for the betterment of its condition". After that, the father could no longer exercise any control over the child and it no longer resided with him.
Our original opinion and decree are reinstated and made final.
Original Opinion and Decree Reinstated.
REGAN, Judge.
I respectfully reiterate my dissent attached to the original opinion of this Court.