Hillsborough,
No. 4486.

AMERICAN CASUALTY COMPANY OF READING, PA.

*v.*

JEAN PAUL SENECAL & a.

Argued June 6, 1956.

Decided July 6, 1956.

*Devine & Millimet* (*Mr. Millimet* orally), for the plaintiff.

*Normand R. Pelletier* (by brief and orally), for the defendant Leonard Fortier.

*Morris D. Stein* for the defendant Jean Paul Senecal, furnished no brief.

*Louis M. Janelle* for the defendant Robert Morrissette, furnished no brief.

*Guertin & Widener* for the defendants Gerald and Arthur Delage, furnished no brief.

DUNCAN, J. The policy which is the subject matter of this action was obviously designed primarily to afford protection against liabilities which might arise out of the operation of a filling station

or garage, including risks from the operation of automobiles in the course of the business, whether such automobiles should be owned by the insured or not.

Since such coverage would necessarily include insurance against risks arising from the ownership and use of the insured's own vehicles, the insuring provisions were also made sufficiently comprehensive to cover "occasional use for other business purposes and the use for non-business purposes of any automobile owned by . . . the named insured and used principally" in the business. Thus it is plain that as one of its features the policy afforded automobile liability insurance upon automobiles owned by the insured. Insurance was for a term of one year, and the policy contained no provision terminating coverage in the event that the insured should cease to use the described premises.

Apart from the statutory endorsement, the policy was designed to afford coverage for owned vehicles without regard to the description of the particular vehicle, so long as its use was primarily for business purposes. Such a vehicle might be insured for a time, and uninsured for a time, depending upon the use to which it was put. See *Hardware Mut. Cas. Co.* v. *Wendlinger*, 146 F. (2d) 984, *cert. den.*, 324 U. S. 882. Furthermore, the use of more than one owned vehicle might be insured at one time, provided the use of each was connected with the business operations. However if the principal use of the vehicle was not connected with the business, it was the intention of the policy, apart from the endorsement, that no coverage should be afforded. *Id.*

In using the Mercury automobile in the collection of accounts which arose out of the conduct of his business at the premises, Senecal was engaged in an "operation . . . incidental" to "use of the premises" for an insured purpose. The accident occurred however, while he was using the car not for collection purposes, but for his own pleasure. This was a nonbusiness purpose, as to which the policy afforded coverage only if the automobile was "used principally in the . . . defined operation." Since the Trial Court has found that the Mercury automobile "was not used principally" for the purpose of "attempting to collect the accounts receivable," and there was no evidence of any use in any other "operation" incidental to use of the described premises as a filling station, Senecal was not covered in his use of the automobile for the "non-business purpose" for which he was using it on March 21, 1953, unless by virtue of the statutory endorsement attached to the policy.

This endorsement was in the usual form, and contained the standard provision that "the policy as amended by this endorsement is a Motor Vehicle Liability Policy as defined in Chapter 122, Revised Laws of the State of New Hampshire as amended [now RSA ch. 268], and all policy provisions required by said chapter are hereby expressly incorporated in the policy by reference." The policy itself insured against liability arising out of the use of "any automobile" in connection with the use of the insured premises, and the occasional use for other business purposes and for non-business purposes of "any automobile owned by" the insured and used principally in operations related to the conduct of the business. Clearly, without the endorsement, the policy was one which provided indemnity against liability "arising out of the ownership . . . or use . . . of [the insured's] motor vehicle" within the definition of a "Motor Vehicle Liability Policy" contained in *s.* 1 VII of R. L., *c.* 122, as amended. See *Culver* v. *Webb*, 244 Wis. 478, 488-90. Unlike the policies before the court in *Employers &c. Assur. Co.* v. *Roux*, 98 N. H. 309, and *Hartford &c. Ind. Co.* v. *Come*, 100 N. H. 177, the policy issued by the plaintiff in this case was not limited to protection against liability arising out of the use of automobiles owned by others, but specifically afforded coverage of vehicles owned by the insured. In *Farm Bureau Ins. Co.* v. *Martin*, 97 N. H. 196, 200, it was said: "In order to establish coverage for a motor vehicle, it must be described or referred to in the policy and capable of being identified as such." The insured's Mercury was capable of being so identified, and the ruling of the Trial Court establishes that its use was covered by the policy before the business was sold on March 9, 1956.

One of the provisions of R. L., *c.* 122, as amended, which the statutory endorsement "incorporated in the policy by reference" was that found in *s.* 16 III: "With respect to accidents which occur within this state . . . the liability of the company . . . shall become absolute upon the occurrence of such an accident; . . . no violation of exclusions, conditions, other terms, or language contained in the policy . . . whether or not a premium charge has been made and paid, shall operate to defeat or avoid the policy so as to bar recovery for such accidents." (RSA 268:16 III).

Under the policy issued by the plaintiff, use of the Mercury owned by Senecal clearly became an insured use during the term of the policy, and coverage would have been provided by the policy itself at the time of the accident, had he then been engaged in

attempting to collect his accounts receivable. The provision which purported to make the actual use an uninsured one, because it was a nonbusiness use of an automobile not "used principally in the . . . operations" defined in the policy, was "language contained in the policy" in the nature of a condition or exception, which the statutory provisions of s. 16, *supra*, rendered inoperative against third persons. *Phoenix Ind. Co.* v. *Conwell*, 94 N. H. 146; *Farm Bureau Ins. Co.* v. *Martin*, *supra*. By virtue of the statute the company was powerless to deprive the public of the protection of the policy against damages arising out of use of the insured vehicle upon the ground that the particular use being made when the accident occurred was one which the policy excluded from coverage.

We are unable to agree with the position advanced by the plaintiff that the statutory endorsement was added only "to insure that Senecal was covered whenever he drove any vehicle not owned by him, even though his operation thereof was in no way connected with the business." A primary purpose of the policy was to insure against liability arising out of the use of business-connected automobiles whether owned by the insured or not. If the Legislature intended that there should be protection in the event of nonbusiness use of the vehicles of others, there is little reason to assume that it intended to withhold protection in the more likely case of nonbusiness use of the insured's own vehicle. Section 16 of the statute required that the motor vehicle liability provisions of the policy should afford protection under the circumstances of this case. The fact that they were embodied in a "Garage Liability" policy did not operate to free them from compliance with the statute.

Financial responsibility statutes in other jurisdictions have been held to apply to like policies. *Culver* v. *Webb*, 244 Wis. 478, *supra; Newton* v. *Employers Liab. Ass. Corp.*, 107 F. (2d) 164; *Landis* v. *New Amsterdam Cas. Co.*, 347 Ill. App. 560; *Traders & General Ins. Co.* v. *Pioneer Mut. Comp. Co.*, 127 Colo. 516. See also, *Eggerding* v. *Bicknell*, 20 N. J. 106.

The answer to the transferred question is that the policy as amended by the endorsement provided coverage for the accident of March 21, 1953, within the statutory limits then in effect.

*Remanded.*

All concurred.