JOPINSON, Judge.
The defendants have appealed from a judgment of $5,000.00 in favor of plaintiff.
The plaintiff suffered personal injuries when struck by an automobile owned and driven by defendant, Edward F. Duplessis, about 6:30 o’clock a. m., on March 11, 1959, while walking across the downtown side of Canal Street on Decatur Street in New Orleans. Decatur Street enters the downtown' side of Canal Street and becomes Magazine Street on the uptown side. Just before the accident the plaintiff got off a street bus at the uptown lake corner of *869 Canal and Magazine Streets, walked across the uptown side of Canal Street, crossed the neutral ground and was walking across the downtown side of Canal Street toward the lake corner of Canal and Decatur Streets when he was hit by the Duplessis car. The downtown side of Canal Street is forty-one feet wide at Decatur Street. The plaintiff had traversed twenty-seven feet from the neutral ground toward the corner of Decatur Street. Duplessis was driving his car from the river in the second lane from the neutral ground of Canal Street.
The Bankers Fire and Marine Insurance Company had in force an automobile public liability insurance policy with a limit of $5,-000.00 for one person in the name of defendant, Duplessis, covering the Ford automobile owned and being driven by Duples-sis. The insurance company and Duplessis are both defendants.
Plaintiff was sixty-nine years old. He had operated his own butchershop at the French Market for fifty-two years. He arrived at his shop about 2:00 o’clock a. m., the morning of the accident, as was his custom, cut his meat and left about 5:00 o’clock to deliver an order of meat across Canal Street. On his return journey he rode a street bus toward Canal on Camp Street. The bus turned toward the river at Canal and when it stopped at the lake corner of Magazine Street the plaintiff left the bus and started to cross Canal Street when the light turned green. After he progressed across the neutral ground he saw that the light was still green for him and he entered the downtown side of Canal Street on the green light. When he was twenty-seven feet from the neutral ground the Duplessis car struck him and knocked him fourteen feet to the curb against a garbage can. Immediately prior to the accident Duplessis’ car skidded in a straight line eighteen feet starting about the middle of the projection of Decatur and some distance after the impact. The plaintiff never saw the car before the accident, and Duplessis never saw plaintiff until it was too late to stop the car. The plaintiff said he had about ten feet to go to complete the crossing when he got hit. From the debris in the street, which the police took to be the point of impact, the police measured fourteen feet from that point to the downtown curb of Canal Street. The plaintiff testified that as he crossed Canal he kept watching the green light and that it was green when he got hit.
Thomas W. Roberts was at that time employed as a barker at the Old French Opera House. He is a small man, three feet seven inches tall. Counsel for defendants criticize some slight inconsistencies in the testimony of Roberts. While it is apparent that Roberts does not possess a mind of superior intelligence, a study of his testimony reveals clearly that he had the capacity to apprehend the interrelationships of the facts and the ability to explain them with sufficient tenacity of purpose to enable the Court to accord considerable weight and credit to the main thread or theme of his testimony that plaintiff was crossing on the green light when hit by the car. It is true that on cross-examination he was led into saying some things contrary to his original explanation but when he realized that he had done so in most instances he corrected himself.
Roberts said he was walking up the lake side of Decatur within five or six steps, or about twenty feet, of Canal Street when he saw plaintiff leaving the neutral ground coming toward Roberts and the traffic light was green. He saw a car come out of Decatur Street into Canal Street on the green light about that time. When Roberts reached the curb of Canal Street and was ready to start across, he said the plaintiff had progressed about twenty-five feet toward Roberts. Roberts said that the light still being green for him he stepped off the curb to go across Canal and made one or two steps when he heard the squeaking of car brakes and saw the Duplessis car hit the plaintiff while the light was still green, but the light turned red about that time and Roberts jumped back to the sidewalk. Fie said there was another car next to the neutral ground on Canal Street beyond the car that hit plaintiff, but it missed plaintiff. He was *870 positive that the light was green on his side when the car hit plaintiff. He said several times that “ * * * When the light turned red the car had done hit him.” He stuck to that statement throughout.
Counsel for defendants contend that Roberts, being abnormally small in stature, wants to help a friend and fellow sufferer by testifying falsely for the injured plaintiff. We do not gain that impression at all from his testimony. Roberts had seen plaintiff several times in the French Quarter and had coffee with him, but it is plain that they were not close friends. Roberts didn’t even know plaintiff’s correct name.
Defendant, Duplessis, testified that he left Buras, Louisiana, early that morning to bring his son-in-law to the Charity Hospital. They crossed the Mississippi River on the ferry at the foot of Canal Street and as they drove out Canal in the second lane from the neutral ground the light at Decatur Street turned green when their car was in the middle of the block. Duplessis said he then picked up speed to about twenty-five miles an hour. When he got within a few feet of Decatur Street he said a car pulled out from the Decatur Street side or from the Canal Street curb. He did not know from what place or position it came or where it went. (He first told the police officers at the scene the same morning that the car referred to came out of Decatur Street). He testified that he thought the car might come over in his lane and he applied his brakes, which caused his car to skid. (The police officer said at that point his car made skid marks for twelve feet extending up to the Decatur Street line). Duplessis then saw the car go ahead and he took his foot off the brake pedal and “ * * * jammed on the accelerator very hard.” He said about the time he was in the Decatur Street intersection plaintiff came from in front of another car driven by Naylor into the path of Du-plessis’ car. Duplessis again applied his brakes and skidded until the car hit and stopped completely. (The police officer said the skip between the first marks and where they started again was eighteen feet and that the last line of skid marks measured twenty-two feet starting in the middle of Decatur Street. See Police sketch (“Wilson 1” at page 151 of the transcript).
The defendant, Duplessis, did not see plaintiff until 'he appeared in front of his car. Duplessis attempts to excuse himself for not seeing plaintiff by saying that the Naylor car to his left was a little ahead and his vision to the left was obscured by that car. The fact is Duplessis didn’t look to the left according to his own testimony. He said he was looking to his right. He said the front wheels of his car were about even with the rear wheels of the Naylor car to the left. The son-in-law of Duplessis, a passenger in the Duplessis’ car, said the two cars- were about even.
While on this point, we comment that if the Naylor car to the left of Duplessis was less than a car length ahead in the adjoining lane, there may have been some obstruction by that car at an extreme left angle from straight ahead. It is only common sense that as the two cars approached the intersection in that position to each other the angle to the left of Duplessis would have been quite sufficient to have included the area of the neutral ground at the crossing. The greater the distance from the crossing toward the river the wider would have been the view in front. Therefore, it is definite that plaintiff was in the downtown side of Canal Street while Duplessis travelled considerable distance at twenty-five miles per hour before the accident. Naylor, the driver of the car on the left of Duplessis, saw plaintiff crossing the neutral ground and come into Canal Street, and Duplessis should have and could have seen the same thing. We believe that as late as the moment Naylor said he put on his brakes to avoid hitting plaintiff as plaintiff crossed in front of Naylor, that Duplessis could have seen the plaintiff before or even by that time. There was nothing to prevent Du-plessis from seeing the plaintiff in front of the Naylor car. Duplessis was a few feet to the rear of the front of the Naylor car and by that position had a longer time and *871 a greater opportunity to avoid hitting the plaintiff than Naylor had. The obvious reason that Duplessis did not see plaintiff earlier is that Duplessis was watching the car which came out of Decatur Street on the green light and turned right on Canal. That is the car which caused Duplessis to apply his brakes and skid twelve feet up to the river side projection of Decatur Street.
On the subject of the car that caused Duplessis to skid twelve feet just before entering Decatur Street intersection, Du-plessis said that car could have come out of Decatur Street or from the curb of Canal Street but he did not know where it came from. The daughter of Duplessis, who was also in his car, did not know where it came from. She said that she had not seen that car before Duplessis put on his brakes. She said then she thought it came from the curb of Canal Street. Du-plessis finally got around to believing that car might have come from a parked position at the curb of Canal. Almost everything the daughter said in her testimony was prefaced by “I think.” Mr. St. Ann, the son-in-law, never did see any car to the right. He testified that he did not know why Duplessis put on his brakes the first time. This witness had not noticed the traffic light though he said it was green. When asked how he knew it was green, he said he never noticed the light, but he just imagined it was green.
The conclusion that the car which caused Duplessis to apply his brakes the first time came out of Decatur Street and on the green light for Decatur Street is inescapable. In addition to the testimony of Roberts, referred to above, there is a sketch made by the traffic officer at page 151 of the transcript. (Exhibit Wilson 1). It shows the first set of twelve feet of skid marks ends at the projection of the river curb of Decatur Street. At page 247 of the transcript is a photograph, taken from the third floor of a building at the lake corner of Magazine and Canal Streets, which picture shows a bird’s-eye view of the intersection, and shows that any car parked at the curb on Canal Street had to be toward the river from the fire plug at the Custom House corner, and necessarily would be quite some distance from Decatur Street, and also some distance toward the river from the point where the twelve feet of skid marks appear on the pavement as clearly shown by the picture and the sketch. Therefore, such a car pulling out from the curb on Canal Street could not have caused Duplessis to put on his brakes at the Decatur Street intersection. It is our conclusion that Du-plessis approached Decatur when the light was red for him and applied his brakes when the car came out of Decatur on the green light, because he thought it might cross in front of him. The plaintiff was then crossing on the green light for plaintiff. The evidence is clear that plaintiff was almost across Duplessis’ lane when Duples-sis, going twenty-five miles an hour, went into the crossing and hit the plaintiff with the right front of his car. Witness Roberts said the light turned red for him after plaintiff was hit. Roberts was looking at the light and had stepped off the curb to cross Canal Street when the light was green, but jumped back when the car came across the intersection and hit the plaintiff, and the light turned red for Roberts.
At page 148 of the transcript is a photograph (Labiche 1) of the Duplessis’ car, identified by the police officer as sitting in its skid marks. It is noted on that photograph that the rear wheels of the Duplessis car had made no skid marks. The rear wheels are not in track with the front wheels and there are no skid marks in the tracks of the rear wheels. That would indicate faulty brakes.
Witness Naylor was driving his car to the left of Duplessis. He testified that when he was at Chartres Street the light at Decatur was red, and that it turned green for him on Canal when he was one hundred yards (300 feet) from Decatur. He later changed that to say he was half way the block, then he said two-thirds of the block, and finally that he was not sure where he was when the light turned green. When Naylor saw *872 plaintiff walking fast across Canal he put on his brakes and nearly hit plaintiff. He had not up to that time noticed the Duplessis car, but did notice it when the plaintiff got off to Naylor’s right front.
As to Mr. Naylor, he held two jobs, one at night and the other in the day. He had just come from his night job going to his day job. When asked how he could do that, he said that he could sleep a lot on one of the jobs, though he did not want that known. He was so positive that he was telling the truth about the facts, and in his desire to emphasize it, he offered a month’s salary if it is found that he has lied about the light being green for him. Such unselfish and generous emphasis is never impressive.
As noted above in discussing the car which caused Duplessis to first apply his brakes, all the testimony of the daughter and son-in-law of Duplessis is of no help to him whatsoever.
The testimony is in dispute as to whether there was a passenger bus stopped at the corner on the lake side of Decatur. There is no testimony that there was any dense crowd of people getting on or off a bus at that point. Roberts said there were only one or two people at that corner. Counsel for defendants argues that, Roberts being very short in height, if he were five or six steps from Canal curb, or twenty feet as was estimated, when he first saw the plaintiff leaving the neutral ground to cross that side of Canal Street, it would have been impossible for Roberts to see through or over the crowd of people. To substantiate the existence of a dense gathering at the bus entrance, counsel offers in evidence a photograph (defendants photo #5) at page 246 of the transcript, which photograph was taken at 2:00 p. m., on April 28, 1960. (Not at 6:30 a. m., on March 11, 1959). This photograph is wholly inadmissible and is given no consideration whatsoever.
There is another photograph taken at the same time twenty feet from Canal at the lake corner of Decatur Street. Assuming that the physical environments had not changed since the date of the accident, this picture indicates clearly that Roberts, small as he was, had a perfect view of the plaintiff coming across Canal.
Duplessis was charged by the District Attorney in a Bill of Information with two counts of criminal negligence. Du-plessis pled guilty to one count and the other count was dismissed. The Court imposed a fine of $100.00, which he paid. Duplessis at first denied that he had pled guilty. When pressed by counsel about it, he tried to explain that he had employed a lawyer friend in that criminal case, and that on the day he was called up his lawyer answered for him, and he did not know what the lawyer had said. He finally admitted that the lawyer had pled him guilty, but he continued to deny that he knew beforehand that the lawyer was going to do that. He said the lawyer had not told him that he was going to plead him guilty, and denied that he and the lawyer discussed the matter before the arraignment. The testimony of Duplessis about that is completely false. It is proven so by the written statement of the lawyer who represented Du-plessis in that criminal prosecution, which statement was introduced by agreement of counsel in this case. The attorney’s statement shows definitely that the attorney had discussed fully with Duplessis the matter of pleading guilty or not guilty, and that such discussion took place before the arraignment. The attorney said that Duplessis, realizing what he was up against, agreed to plead guilty to one count upon the District Attorney’s consent to dismiss the other count of the charges. The deliberate falsehood on the part of Duplessis with respect to a matter pertinent to the issue here renders his entire testimony wholly discredited.
Entirely aside from this angle of the testimony of Duplessis, even if his testimony be accepted as true, there is a pre-ponderence of evidence that plaintiff was not guilty of any negligence, and that Du-plessis was guilty of gross negligence, caus *873 ing this accident and the resulting damages to plaintiff by the failure of Duplessis to give any attention to the possibility of a pedestrian crossing Canal Street when Du-plessis entered the intersection on a red light. We are convinced that plaintiff started to cross the uptown side of Canal Street when the traffic light turned green for him; that he walked straight ahead across the neutral ground, entered the downtown side of Canal and was proceeding across on the green light to a point twenty-seven feet from the neutral ground and within fourteen feet of the opposite curb when he was hit by the right front of the Duplessis car. He was within two feet of having crossed and cleared the lane in which Duplessis was travelling, and plaintiff should have been permitted to proceed to clear the intersection in safety.
This is not one of these cases where plaintiff suddenly stepped into the path of the offending car without any opportunity for the driver to avoid the accident. The jurisprudence on the situation prevailing in this case is so clear and well established that we deem it unnecessary to give a complete bibliography of the authorities. A few late Louisiana cases should suffice. Belshe v. Grant, 235 La. 17, 102 So.2d 477 (and other cases cited therein); Pereira v. Herbert, La.App., 59 So.2d 729; Deck v. Page, La.App., 77 So.2d 209; Broussard v. Thompson, La.App., 128 So.2d 477; Cox v. Gross, La.App., 47 So.2d 102; Ingram v. McCorkle, La.App., 121 So.2d 303; Keenan v. Wactor, La.App., 130 So.2d 800; Woodard v. Burkes, La.App., 135 So.2d 333. Some of these cited cases turn upon the application of the doctrine of last clear chance. The exercise and degree of care imposed on drivers of the vehicles in the cases cited above are equally applicable here, though we do not hold plaintiff guilty of any negligences, contributory or otherwise.
Dr. O. L. Pollingue, the attending physician of plaintiff, gave a written report on July 30, 1959, which is filed in evidence by consent. This report shows that plaintiff’s injuries consisted mainly of a com-minuted fracture of the shaft of the tibia of the right leg, with bowing at the fracture site; a fracture of the shaft of the fibula of the left leg, with overriding fragments; complete dislocation of the left ankle with fractures of the internal and external malleoli; an operative procedure was done on March 17, 1959, at which time an open reduction of internal fixation of the right tibia was performed, and a long leg cast applied. On March 24, 1959, plaintiff was taken back to the operating room and the fracture of the left leg was then fixed by open reduction and internal fixation using rush pins and screws, and a long leg cast was applied to that leg. On March 9, 1959, the right long leg cast was removed and changed. The long leg cast on the left leg was removed and a short leg cast applied. On June 20, 1959, the long leg cast of the right leg was removed and there being some motion at the fracture site, another long leg cast was applied. The left short leg cast was removed and by X-rays satisfactory progress was revealed. At that time the patient was told to return to the Doctor in approximately six weeks. The report does not show what was done thereafter and only summarizes that satisfactory progress was being made in the left leg and slow progress in the right, and that the fracture not being completely healed, and the leg still being under treatment in a long leg cast, the doctor said is was impossible to determine the residual disability which would be present as an end result. While the medical evidence is not complete with the final recovery of the plaintiff, the evidence is sufficient to more than warrant the lump-sum award of $5,000.00 made by the District Court, which included the doctor’s bill of $1,000.00 and the hospital bill of $483.30.
The judgment of the District Court is affirmed.
Judgment affirmed.