102 So.2d 866

**BATON ROUGE PRODUCTION CREDIT ASSOCIATION**

v.

**A. G. ALFORD et al.**

No. 42597.

May 26, 1958.

France W. Watts, Jr., Franklinton, for defendant-appellant.

Carter, Erwin & Carter, by Woodrow W. Erwin, Franklinton, for plaintiff-appellee.

HAWTHORNE, Justice.

Baton Rouge Production Credit Association, a judgment creditor of A. G. Alford, brought this suit to cancel from the public records of Washington and Tangipahoa

Parishes a conventional mortgage executed by Alford which antedates the credit association's judicial mortgage.

The conventional mortgage here sought to be canceled was drawn by Alford in 1951 in favor of Alletha McIlwain, a party interposed having no real interest in the transaction, and was given to secure a note for $80,000 made by Alford, which note was held by Alford until after this suit was filed. The credit association contends that the $80,000 mortgage is a simulation, recorded by Alford to defraud his creditors, and that therefore it should be declared null and ordered erased from the public records

After this suit was filed, Alford mailed the $80,000 note secured by the mortgage to his brother-in-law, Jesse Crawford, a resident of Gamboa in the Canal Zone, allegedly as security for $42,500 which Alford claims he borrowed from Crawford in varying amounts and at various times, from 1945 through 1951. When the district court learned from Alford at the trial of this case that the $80,000 note had been transferred to Crawford, an absentee, pendente lite, the judge himself wrote a letter to Crawford informing him of this suit and granting him as holder of the note approximately two months to come into court and assert whatever rights he might have in the matter. Although Crawford wrote a brief note to the district judge acknowledging that he held the note, he made no

attempt to intervene in these proceedings, and a few months later the credit association filed a rule asking the court to appoint a curator ad hoc to represent the absent Crawford. The curator was appointed and Crawford was ordered to show cause through the curator why the $80,000 mortgage should not be declared a simulation and as such canceled from the records. Although the curator was served with a copy of the rule, he was not served with a copy of the petition filed in this suit, nor was he cited to appear in court and answer that petition.

The trial judge concluded that Crawford had never lent Alford any money, declared that the mortgage under attack was a simulation, and ordered that it be canceled from the mortgage records of Washington and Tangipahoa Parishes. This appeal resulted.

■ Naturally, Alford argues in this court that the mortgage sought to be canceled was a valid transaction, given as security for the pre-existing debt of $42,-500 owed by Alford to Crawford. This contention gives us no trouble. The record in this case fully supports the finding of the trial judge that Crawford never lent Alford anything, and that the mortgage under attack is a simulated transaction, entered into by Alford to defraud his creditors. In an attempt to prove that he had owed his brother-in-law $42,500 since 1951,

Alford testified in the lower court that Crawford, who has a job as maintenance man on a railroad in the Canal Zone where he has lived for fourteen or fifteen years, had been back in this country at various times, and had lent him $20,000 in 1945, $10,000 in 1946, $5,000 in 1948, and $7,500 in 1951. According to Alford, these advances were made in cash in $100 bills, and took place on the streets of Kentwood with no witnesses present; no interest rates or terms were discussed; no written evidence of indebtedness was demanded by Crawford or given by Alford; and furthermore the borrowed money was not deposited in Alford's bank. Moreover, Alford made no attempt at the trial of this case to show that Crawford was sufficiently wealthy to lend large sums of money in such a casual manner, or had withdrawn savings from the bank or sold property in order to help his brother-in-law financially. Then, too, as further evidence that the mortgage here under attack is a simulation, we note that counsel for the credit association introduced in evidence various loan applications which Alford had made to them, the latest dated September 5, 1951. These applications are accompanied by financial statements listing the assets and liabilities of the loan applicant and are signed by Alford. The financial statement accompanying Alford's September 5, 1951 loan application lists several liabilities, but the money allegedly owing to Crawford at that time is not listed on Alford's statement as one of his then existing liabilities. However, perhaps the most damaging evidence against Alford in this whole matter is the fact that Crawford failed to intervene in the instant suit when given an opportunity to do so by the trial judge before whom the case was being tried. The only logical conclusion that can be drawn from Crawford's lack of interest in this litigation is the inescapable one that he has no real interest in the matter because he had never loaned Alford a penny.

The other issue raised by Alford on this appeal is that the conflicting claims of the credit association and Alford cannot be properly adjudicated without joinder of Jesse Crawford, the holder of the note secured by the mortgage here sought to be canceled, as a party to the suit, and that as the curator appointed to represent the absentee Crawford was not cited and served, but rather was summarily proceeded against by rule, the indispensable Crawford is not before the court and consequently this suit must fall.

■ Whether Crawford is before the court in the instant action and will be bound by the judgment in this case we need not decide at this time because having acquired the note pendente lite he is not an indispensable party to this suit and consequently it can proceed without him.

Generally the holder of a note is an indispensable party to litigation involving

that instrument, as every person who may be affected by a decree must be made a party to a suit. See Doll v. City of New Orleans, 221 La. 446, 59 So.2d 449; Jamison v. Superior Oil Co., 220 La. 923, 57 So.2d 896; 39 Am.Jur. 884, Parties, sec. 25. But at the time the instant action was filed Alford held the $80,000 note himself. The fact that Alford transferred this note to Crawford pendente lite did not have the effect of making Crawford an indispensable party to these proceedings. In other jurisdictions a person who while suit is pending acquires an interest in property which will be affected by that litigation is not an indispensable party to the proceedings involving the property, although he may be entitled to intervene therein. See 67 C.J.S. Parties § 45, p. 968; 39 Am.Jur. 937, Parties, sec. 65; "Necessary Parties Defendant to Action to Set Aside Conveyance in Fraud of Creditors", 24 A.L.R.2d 395, especially sec. 31, p. 463–464, "Purchasers Pendente Lite". In Galbreath v. Estes, 38 Ark. 599, the Supreme Court of Arkansas held that "Litigants are exempted from taking any notice of a title acquired during the pendency of a suit. Otherwise, litigation might be interminable. Sto.Eq.Jur., sec. 406." We think this view of the matter is sound and we adopt it as our own.

The district court judgment is affirmed, appellant to pay all costs.

PONDER, J., dissents.