115 So.2d 648 (1959)
Fred D. WELLS, Individually and on Behalf of Fred D. Wells, Jr., Plaintiffs-Appellees,
v.
M. H. MESHELL and State Farm Mutual Automobile Insurance Company, Defendants-Appellants.
No. 9105.
Court of Appeal of Louisiana, Second Circuit.
October 30, 1959.
Rehearing Denied November 25, 1959.
Certiorari Denied January 11, 1960.
*649 Lunn, Irion, Switzer, Trichel & Johnson, Shreveport, for appellants.
Jackson, Smith, Mayer & Kennedy, Shreveport, for appellees.
AYRES, Judge.
This is an action in tort arising out of an accident of March 7, 1958, occurring in the 4200 block of St. Vincent Avenue, in the City of Shreveport. A collision occurred between a bicycle, upon which Fred D. Wells, Jr., plaintiff's minor son, was riding, and a Chevrolet automobile of the defendant, M. H. Meshell, driven and operated at the time by his minor son, Harmon A. Meshell.
Plaintiff seeks to recover of M. H. Meshell and his public liability insurer, State Farm Mutual Automobile Insurance Company, on behalf of his minor son, damages for personal injuries, and for pain and suffering, and for permanent disability to his right arm; and to recover, in his own behalf, hospital and medical expenses incurred in the treatment of the injuries sustained aforesaid by his minor son, as well as for property damage resulting from the alleged destruction of the bicycle.
After trial by jury, a verdict was rendered in favor of plaintiff individually for $1,032, and on behalf of the minor for $7,500. From a judgment signed in accordance with the verdict, the defendants appealed.
St. Vincent Avenue, running generally north and south at the scene of the accident, is an asphalt-surfaced street, with gravelled shoulders sloping gradually and taking the form of a shallow ditch covered with grass extending to the sidewalk.
At the time of the accident there were no unusual atmospheric conditions. The weather was fair and the street surface dry. There were no obstructions to one's view, either from the bicycle or from defendant's automobile.
On the date of the accident, Fred D. Wells, Jr., was 11 years, 2 months, 8 days old. Harmon A. Meshell was 17 years of age.
The facts immediately preceding the collision may be briefly summarized. Meshell, accompanied by two companions, John Manshack and Allen Dewey Padgett, was driving south on St. Vincent Avenue at a speed of 25 to 30 miles per hour, followed by an automobile of one James D. Whatley. Fred D. Wells, Jr., had gone on his bicycle to a store where he purchased a candy bar and was returning with his purchase in his hand, riding his bicycle on his left-hand shoulder of the street, that is, to Meshell's right, the shoulder on the west side of the street. There was nothing unusual about his speed or the maneuverings of the bicycle. As the car and bicycle approached each other, Meshell saw young Wells some distance away on the shoulder. Nevertheless, he continued to proceed on his right-hand side of the street at a distance of about two to three feet from the edge of the asphalt surface. No indication of danger having appeared to, or having been seen by, Meshell, Meshell momentarily directed his attention primarily to traffic conditions ahead, inasmuch as he was approaching a slight curve in the street, never, however, according to his testimony, losing sight of young Wells, who had constantly remained in his vision and at a distance estimated *650 at five to six feet from the edge of the street's surface.
When the vehicles were about to meet and pass, the bicycle suddenly swerved from the shoulder and turned directly toward and into the right front of the automobile. According to the testimony of the witnesses to the accident, including Meshell, his companions, and three girls who were standing on the sidewalk nearby, the bicycle probably struck a hole in, or a rock on, the shoulder, causing young Wells to lose control of the bicycle and to precipitate its plunge upon the street in front of the automobile. The right headlight and the fender were struck by the bicycle, or vice versa, and, as Wells was thrown therefrom, he sustained injuries for which damages are sought in this action.
Acts of negligence on the part of Meshell, allegedly constituting the sole proximate cause of the accident, consist of: First, excessive speed; second, failure to bring his automobile under control on seeing the approach of the bicycle; and, third, failure to keep the bicycle under constant observation. In the alternative, it is contended that Meshell, had he been exercising proper care, could have avoided the accident; and that he, therefore, had the last clear chance to avoid the accident, but failed to do so.
The defendants denied that Harmon A. Meshell was guilty of any negligence causing the accident, and averred Wells was guilty of such negligence constituting a proximate cause of the accident or, in the alternative, constituting contributory negligence.
First in logical order for consideration is the question of liability predicated upon the acts of negligence charged to Harmon A. Meshell. From our study and review of the record, we are not convinced that plaintiff has borne his burden of proof and established, by a preponderance of evidence, negligence on the part of Meshell, constituting a proximate cause of the accident. Nowhere was it testified that Meshell's speed was excessive. His own testimony, corroborated by that of his companions, is that he was driving at approximately 30 miles per hour. Whatley, judging from his own speed, and after having followed the Meshell vehicle from the intersection of St. Vincent and Claiborne Avenues or for approximately a half mile or more, estimated Meshell's speed at 25 to 30 miles per hour. Nor does the evidence establish that Meshell did not at all times have his vehicle under control. As stated, his speed was not excessive and, when the bicycle suddenly swerved from its path on the shoulder toward and into the street in front of the automobile, Meshell immediately applied his brakes, skidded his wheels, and brought the car to a stop.
Nor does the proof establish that Meshell failed to maintain a proper lookout or to keep the bicyclist under his constant observation. Although Meshell, after observing that Wells was at a safe distance from the street on the shoulder and there was no apparent danger, directed his attention down the street to observe traffic conditions ahead, as was his duty to do, Wells was never completely out of his vision. Meshell's position on this point finds support in the promptness of his actions in applying his brakes when the bicycle suddenly swerved and hurled itself onto the highway immediately in front of his car.
Lastly, for consideration, is the charge that Meshell had the last clear chance to avoid the accident and failed to avail himself of that opportunity. This doctrine, as applied to those operating motor vehicles, is that where a motorist sees, or where by the exercise of due diligence, he could and should have seen, a person in peril, of which such person is unaware or unable to extricate himself, the duty devolves upon the motorist to use every possible available means to avert injury, notwithstanding the negligence of such person; and, if the motorist fails to perform such duty, the last clear chance doctrine applies even though such other person's negligence *651 continues to the moment of the occurrence of the accident. Rottman v. Beverly, 183 La. 947, 165 So. 153; Jackson v. Cook, 189 La. 860, 181 So. 195; Newton v. Pacillo, La.App., 111 So.2d 895, 897.
In the latter case, we stated the essentials for the invocation of this humanitarian doctrine as follows:
"For the successful invocation of the doctrine the existence or presence of three essential elements must be established, (1) that the plaintiff was in a position of peril of which he was unaware, or from which he was unable to extricate himself; (2) that the defendant actually discovered or was in a position where he should have discovered plaintiff's peril, and (3) that, at the time, the defendant could have, with the exercise of reasonable care, avoided the accident."
From the facts, a resume of which is given herein above, we are not convinced that the doctrine finds application in this instance. Wells, while riding his bicycle on the shoulder of the street some five or six feet from the surface thereof, was in a position of safety. He was not in a position of peril. He was only in a position of peril when his bicycle hit the hole or rock on the shoulder, plunged forward and threw him on the street in front of defendant's oncoming car. It was then, and only then, that Wells was placed in a position of peril, which defendant's driver immediately recognized, applied his brakes, and endeavored to avoid the accident. It was not possible for Meshell to have sooner observed plaintiff's perilous position than he did. His discovery thereof was simultaneous with the act whereby Wells was placed in such position. It was then too late, in point of time, distance, or opportunity, for Meshell to do anything effective to avoid the accident. Maryland Casualty Co. v. Allstate Insurance Co., La. App., 96 So.2d 340; Ballard v. Piehler, La. App., 98 So.2d 273; Newton v. Pacillo, supra.
We, therefore, are of the opinion that the doctrine of last clear chance or of discovered peril is inapplicable to the facts shown to exist here. The conclusion reached obviates the necessity of giving consideration to the charges of negligence or of contributory negligence directed against Fred D. Wells, Jr., or of giving consideration to the question of his capability, on account of his youth, of committing acts of contributory negligence. This conclusion impels us to the ultimate determination that the judgment appealed is manifestly erroneous.
Accordingly, the judgment appealed is annulled, avoided, reversed, and set aside; and it is now Ordered, Adjudged and Decreed that plaintiff's demands be and they are hereby rejected and his suit dismissed at his cost, including the cost of this appeal.
Reversed.