LOTTINGER, Judge.
This is a tort action brought by plaintiff, an old colored woman who, while walking across Union Street in the City of Opelousas on November 10, 1957, was struck by an automobile owned and driven by Larry W. Comeaux. Named as defendants are Comeaux and his liability insurer, Southern Farm Bureau Casualty Insurance Company. The petition recites that Comeaux was negligent in failing to keep a proper lookout, in driving at an excessive rate, in not having his car under control, in failing to apply his brakes timely and in failing to blow his horn. Alternatively, it is averred that Comeaux had the last clear chance to avoid the accident and that he failed to avail himself of same.
The defendants’ answer admitted that plaintiff was struck by Comeaux as she was crossing from the east to the west side of Union Street, but denied any negligence on the part of Comeaux. It is alleged that when Comeaux had almost reached the point of impact the plaintiff suddenly and without warning moved out of a group of people on Union Street and stepped directly into the path of the automobile, making it impossible to avoid striking her. Alternatively, contributory negligence is pleaded as a bar to plaintiff’s recovery.
Following trial on the merits the Lower Court awarded plaintiff the sum of $10,-739.60 and the defendants have appealed. Subsequent to the lodging of the appeal with us a motion was filed reciting that plaintiff died on August 13, 1959 and requesting that her administrators be substituted as parties plaintiff.
The following facts are not in dispute: Union Street in the City of Opelousas is of concrete construction, measures 36 feet in width, has a black line or tar strip in the center and runs in a north and south direction. At the north end of the street on the west side there is situated the St. Landry Catholic Church and approximately two- blocks to the south on the east side of the street there is situated a colored Catholic Church known as the Holy Ghost Church.
The plaintiff’s home is situated on Church Street which lies to the west of Union Street. For years it had been her custom to walk each Sunday morning from her home to Mass and then, when services were over, to walk back to her home. Customarily, she would leave the church, proceed north along Union Street a short distance and cross it where it is intersected by a side street known as Perry’s Lane.
Comeaux, a farmer who resides outside of Opelousas, regularly attended Mass on Sunday mornings at the white church, at the northern end of Union Street and would use that thoroughfare on his way to and from church. On the morning of the accident, as was their custom, both Comeaux and the plaintiff attended the 6:30 o’clock Masses at their respective churches and, at 7:30, when the Masses were over, prepared to return to their homes. At this time there were cars parked on both east and west sides of Union Street and there was both vehicle and pedestrian traffic caused by the departure of those who had attended church and *849 the arrival of those planning on attending later services. The weather was clear and dry.
The plaintiff testified that after leaving the Holy Ghost Catholic Church she proceeded north along the east side of Union Street and, when she reached the intersection of Union and Perry’s Lane and that after looking, and seeing no cars, she started across Union. She stated further that when almost across the street and when within about two feet of the west side thereof, she glanced to the right and, for the first time, saw Comeaux’ automobile just an instant before it struck her. She stated that during the time that she was crossing the street, she was alone although there may have been some people behind her. She stated further that at no time while crossing the street did she ever stop.
The accident was investigated by Mr. Burleigh Perron of the Opelousas City Police. Upon arriving at the situs of the accident he found Comeaux’ automobile headed south in the west lane of traffic. He stated that the car had not been moved and that he ascertained this fact by the skid marks on the pavement which he estimated as being about ten feet in length. When asked the position of the car in the traffic lane this witness stated that it was approximately equi-distant from the center stripe or tar line and the western curb. It was his estimate that Comeaux’ vehicle had been traveling between 20 and 25 miles per hour. He stated that he questioned Comeaux as to how the accident occurred and that the latter told him that when he saw plaintiff, it was too late for him to stop.
One, Jessie Donatto, called by the plaintiff, testified that on the morning of the accident, just after the 6 :30 Mass he was driving North on Union Street and had stopped just before its intersection with Perry’s Lane at which time he let the plaintiff and two other women cross the street ahead of him. He stated that at that time he saw no traffic approaching from the north and that just after plaintiff crossed the center of the line he saw Comeaux’ car approaching. He stated that the plaintiff never stopped walking and that she was struck about midway between the center stripe and the western curb. Comeaux, he stated, had his head down, attempting to light a cigarette just before he struck the plaintiff and did not apply his brakes until after he had hit her. Skid marks were left by the Comeaux vehicle which this witness estimated as extending from 16 to 20 feet. He testified further that the plaintiff was struck about the center of the automobile in the vicinity of the hood ornament and that after being struck she was thrown up onto the hood against the windshield. After the car came to rest the plaintiff was thrown to the pavement at a point, this witness estimates, about 12 feet in front of the car.
On cross examination, this witness testified that he first saw Comeaux when he was about 30 feet from where the accident occurred. Although his view to the north was unobstructed, he had not seen Comeaux previously and did not know where he had come from. He testified that in his opinion Comeaux was traveling at a higher rate than he would have considered the traffic situation, and he estimated his speed as being in the vicinity of 35 miles per hour.
Mr. Seth Lewis, Sr., partner in the law firm representing the plaintiff, testified that on the morning next following the accident he was retained by the plaintiff’s son, Nathan Zachery, and went with him to examine the scene of the accident. He observed a blood stain in the street and took pictures of same which were introduced into evidence as P-21 and P-22. Pie estimated that the blood stains were approximately 10 feet west of the center line.
Nathan Zachery testified that on the morning of the accident he was attending 7:30 Mass and was called from church *850 immediately after the accident occurred. He stated that he spoke to Comeaux who told him that he did not see the plaintiff until after he had hit her. He also stated that he saw the spot of blood on the pavement.
Mr. Comeaux testified that he was the first one to leave his church that morning and that he lit a cigarette as soon as he came out of church and that he was still smoking this cigarette at the time of the accident. As he approached the spot where the accident occurred, he observed 3 or 4 people coming from his left towards the center of the street. At this time he was proceeding about 10 or 12 miles per hour and upon observing the group released his accelerator. He stated that when the group came up to the center line, they stopped and he proceeded on a car length or less when the plaintiff stepped out in front of him. He put on his brakes and came to a stop about three feet west of the center line. According to this witness’ testimony the plaintiff was struck by the left front of his automobile and she fell over his left front fender. He stated that he had spoken to the officer and to Nathan Zachery and had merely told them that the accident was unavoidable. He also stated that though there was a spot on the concrete where the plaintiff had fallen, he did not know whether or not it was blood. When asked if he recognized Donatto, he said that he did not, but that he did remember seeing cars headed north that were stopped as people were walking across the street. He denied that he had his head down and was lighting a cigarette just before the accident occurred.
Aaron Perry testified on behalf of the defendant and stated that he had attended the 6:30 Mass in the white Catholic Church and that he and Copieaux left the church yard where they had parked their cars with Comeaux proceeding first, he next and a Mr. Richard third. He stated that he was proceeding about 10 miles per hour and that Comeaux was about a quarter of a block ahead of him when the accident occurred. Pie said that Comeaux’ car stopped in the center of the west lane and that plaintiff, when he arrived, was lying directly in front of it. He did not see the accident and said that while Co-meaux may have been going a little faster than he was, he did not believe he (Co-meaux) was going over IS miles per hour.
The deposition of Eddie Richard was taken on behalf of the defendants. This gentleman had also attended services at the St. Landry Catholic Church on the morning of the accident and shortly after 7:30 a. m. was proceeding south on Union Street on his way to his home. His vehicle was following that of Mr. Perry and he knew that there was a vehicle or vehicles in front of the latter but did not know who occupied same. He estimated that Mr. Perry was approximately 100 feet in front of him and that Mr. Perry’s vehicle was somewhat closer to the vehicle in front of him than he was to Mr. Perry. He did not see the accident and when he passed the stopped Comeaux vehicle went on by. The plaintiff was at that time, he said, lying in the middle of the west lane some 2 to 4 feet in front of the Comeaux car. When asked the speed at which he had been proceeding, he stated that he was sure it was not over 20 miles per hour but that he could not swear as he was not looking at the speed.
Emily Pitre, called as a witness on behalf of the defendants, stated that she had attended mass at the Holy Ghost Catholic Church on the morning of November 10, 1957 and saw the plaintiff after services when they were crossing Union Street from the east to the west side. She stated that the plaintiff was ahead of her and one or two other persons and was hit after she had crossed the center line. She did not see the Comeaux vehicle “ ’til it slid-ded her down” nor did she remember the plaintiff stopping before she crossed the center line. She stated that she did not remember how far west of the center line the plaintiff was when she was struck but *851 thought that she was closer to the sidewalk on the west side than she was to the center line.
The record makes it clear that the plaintiff was guilty of negligence in either failing to have looked for approaching vehicles or, if she did look, in failing to see the oncoming Comeaux automobile as there were no obstructions or anything else to prevent her from having seen it. We think also, however, that Comeaux had the last clear chance of avoiding the accident and that his failure to avail himself of it was the proximate cause of its occurrence. In the landmark case of Jackson v. Cook, 189 La. 860, 181 So. 195, 398, the Supreme Court held that
" * * * In the present case the plaintiff was guilty of gross negligence which continued up to the moment of the accident. The driver of the car did not see, but could have seen, plaintiff in his peril if he had been looking ahead. The mere fact that the driver of the car in this case did not see plaintiff does not absolve the defendant from liability because it was the duty of the driver to look, and, according to the findings of both courts, he was not looking * * * ”
In the instant case, just as there was nothing to prevent plaintiff from seeing Comeaux, there was nothing to prevent Comeaux from seeing her. It is clear that she did not suddenly appear from behind some obstruction and we do not believe that, considering her age, she sprang suddenly from a standing position directly into the path of his automobile. It is our belief, from the record, as a whole, that this old colored woman .started across Union Street from the east side and proceeded towards the western side oblivious to the danger of approaching traffic. Comeaux was thoroughly familiar with the crowded condition of the street at that time of the morning and was obviously not taking the proper precautions either' by way of speed or by way of keeping a careful lookout, as he proceeded from the Church towards his home. The length of the skid marks in itself is enough to convince us that his speed was excessive under the circumstances and that the fact that he did not see the plaintiff before he did make it equally clear that he was not keeping a proper lookout. We think the case clearly comes under the last clear chance doctrine and that Comeaux and his insurance company should therefore be held liable. A resume of the injuries received by plaintiff would serve no useful purpose, and, suffice it to say that they were painful and disabling. The quantum set by the trial judge we think would be reasonable and note that nowhere do the appellants contend that it is excessive.
For the reasons assigned the judgment appealed from is affirmed.
Judgment affirmed.