FRUGE, Judge.
This suit arose as a result of injuries received by plaintiff,-Agiia Broussard, on December 4, 1958, as she was attempting to walk across Laurel Street in Eunice, Louisiana, when she was struck by an automobile driven by Mrs. Clayton Thompson. At the time of the accident Mrs. Thompson was on a community mission. The Travelers Insurance Company issued a public liability insurance policy in favor of Clayton Thompson and his wife Verna Thompson who are co-defendants herein. From a judgment adverse to defendants they prosecute this appeal. Plaintiff answered the appeal asking that the award be increased.
*478 The accident occurred at approximately 10:00 a. m. on Laurel Street in front of the Eunice Post Office a short distance past the intersection of Laurel Street with Third Street. Laurel Street, U.S. Highway 190, runs East and West, accommodating two lanes of traffic in opposing directions. Third Street runs North and South, and also accommodates two lanes of traffic in opposing directions. At said intersection there is a semaphore signal, or what is ordinarily termed a “stop-light”, directing traffic. Defendant, Mrs. Thompson, was traveling in an easterly direction on Laurel Street and approaching the intersection when plaintiff was leaving the Post Office. Although the Post Office is not at an ordinary pedestrian cross-walk, it is generally known in the area that pedestrians frequently cross the street (Laurel St.) directly from the Post Office rather than going to the intersection to negotiate the crossing. It is not disputed that there was no traffic immediately preceding defendant in an easterly direction. There is some question as to whether or not there were vehicles in the north lane, i. e., the west bound lane. However, it is apparent that there was a truck in the west bound or north lane which stopped for the light at the intersection. There is disagreement as to whether or not plaintiff stepped in front of the truck or in the rear of the truck. Plaintiff testified that she was 6-8 feet into the south lane (defendant’s lane) when she was struck and this is corroborated by the testimony of other witnesses. There is also a dispute as to whether or not defendant “ran” a red-light. However, whether the light was red, caution or green will not alter the result we have reached herein. Plaintiff’s evidence is to the effect that the defendant was seen by plaintiff as she emerged onto the sidewalk from within the Post Office and onto the street when defendant was west of the intersection, and that the light was red. Immediately before plaintiff was struck by defendant’s automobile plaintiff’s daughter, who was following her mother several feet in the rear, shouted a warning to her mother. However, the warning was not timely received and plaintiff was struck by defendant’s automobile. Defendant testified that she traveled this street frequently and knew that people crossed the street directly in front of the Post Office as above described; that she did not look for people attempting to cross the street in that manner; that the way was free of traffic; that she (defendant) never saw plaintiff until she hit her; that she was looking straight ahead and didn’t see her walking across the street. Furthermore, one witness, Joe Brown, testified that had he been in defendant’s position he could have seen plaintiff, i. e. that there was nothing to prevent him (if in defendant’s position) from seeing plaintiff.
Plaintiff alleged that the accident was caused solely as a result of the negligence of defendant in running a red light; failing to keep a proper lookout; driving in excess of the speed limit; in failing to have her car under proper control ; and in failing to see what she should have seen, and failing to do what she should have done. Alternatively, plaintiff plead the doctrine of last clear chance. Defendant answered denying negligence and alleging that the accident was the direct result of the gross and flagrant negligence of plaintiff, and alternatively plead contributory negligence.
The lower court held for plaintiff on the doctrine of last clear chance with appropriate citation of authority therefor. The trial court found, from the evidence, that:
“The Court finds, as a fact, that there were no obstructions between the Thompson automobile which prevented Mrs. Thompson from observing the said plaintiff, consequently the court is definitely of the opinion that there was sufficient distance, established by evidence, for the defendant to have seen the said plaintiff (or *479 should have seen) in sufficient time to avoid the collision.
“The Street on which the accident occurred is approximately 60 ft. in width, so obviously plaintiff, an elderly woman age[d] 58, had walked from the sidewalk southward some 36 to 38 ft. into the street prior to being struck. Mrs. Thompson’s view was unobstructed, consequently she could have seen plaintiff in ample time to have avoided the accident.” (Emphasis added.)
The court in applying the doctrine of last clear chance (and employing the doctrine of the case of Jackson v. Cook, 189 La. 860, 181 So. 195) found that:
“Mrs. Thompson admits she was not looking even though she knew people customarily crossed the street where the accident occurred, which is directly in front of the Post Office
With this finding of the trial court we are in full accord. In the case of Zachery v. Southern Farm Bureau Casualty Ins. Co., La.App., 116 So.2d 847, which is analogous to the case at bar, it was held that where the plaintiff-pedestrian had crossed the center line and there were no obstructions and nothing else to prevent pedestrian from seeing oncoming vehicles, the pedestrian was guilty of negligence in failing to look for oncoming vehicles or if she looked, in failing to observe oncoming automobile, however, the driver of the car, who had no obstructions to prevent him from seeing pedestrian, and who was thoroughly familiar with crowded condition of the street at that particular time of day and who was driving at an excessive rate of speed, had the last clear chance to avoid the accident and his failure to avail himself of it was the proximate cause of the injuries sustained by plaintiff. In the case at bar defendant was thoroughly familiar with the fact that pedestrians crossed the street directly in front of the Post Office. Although the record does not show that defendant was exceeding the speed limit, it is not necessary that she be found to have been exceeding the speed limit for the reason that the speed required is that which is reasonable and commensurate with a given set of circumstances at the time and place. In the Zachery case, supra, that court adopted the language of the case of Jackson v. Cook, 189 La. 860, 181 So. 195, 198, to the effect that:
“ * * * In the present case the plaintiff was guilty of gross negligence which continued up to the moment of the accident. The driver of the car did not see, but could have seen, plaintiff in his peril if he had been looking ahead. The mere fact that the driver of the car in this case did not see plaintiff does not absolve the defendant from liability because it was the duty of the driver to look, and, according to the findings of both courts, he was not looking. * * * ”
In view of the fact that defendant testified that she did not see plaintiff, and there were no obstructions such as would prevent her from seeing plaintiff, we find the doctrine of the Jackson case, supra, equally applicable and consequently defendant is liable in damages to plaintiff.
Plaintiff asks that this court increase the awards for damages. The lower court awarded Mrs. Broussard, as general damages, the sum of $4,000 and Mr. Broussard the sum of $383.50 for medical and hospital expenses. Plaintiff sustained Colles fractures of both wrists and has a residual disability of 60% in her left wrist and 30% in her right .wrist. She has a weak grip and is unable to withstand over two pounds pull on her fingers. (A Colles fracture is a fracture of the distal end of the radius.) In discussing pain Dr. Thompson, who treated her immediately after the accident, testified that traction was applied to both wrists in setting the bones; and that both arms were in large casts for about six weeks; and in smaller and lighter casts for two weeks there *480 after; that these casts are heavy for the person wearing them and they cause discomfort, swelling and skin irritation. Plaintiff is no longer able to help her husband with his work as á tenant farmer; due to the weakness in her hands it is necessary that she have someone fill her wash tubs; she can no longer sweep; she has to cook in small pots because she cannot hold larger ones; her daughter and a neighbor frequently have to help her in performing her house chores; plaintiff did baby-sitting prior to the accident, but can no longer perform such duties especially because she cannot hold a baby in her arms while standing, and can only hold one when sitting; when she was able to baby-sit she earned SO cents per hour, and for housework she earned approximately $10 per week.
Plaintiff, in support of the answer to the appeal requesting that the award be increased has cited and relies on two cases. In Zachary v. United States Fidelity & Guaranty Co., 116 So.2d 167, the Court of Appeal, First Circuit, awarded $8,833 to a twenty-seven year old mother of three children who had sustained a compound fracture of her left arm requiring hospitalization for 7 days, and who was thereby unable to do her housework, or lift her children and who would probably have to have surgery to re-set the fractured bone. The fracture was of a serious nature, i. e., the fracture was in the ulna with dislocation of the radius or what is termed a “Monteggia fracture”. In Wainwright v. Globe Indemnity Company, 75 So.2d 554, the Court of Appeal, Second Circuit, awarded $15,000 to a woman 52 years old for injuries disabling her from continuing a major portion of her activities. As a result of the injuries in the Wainwright case, supra, plaintiff suffered intense pain in the right flank; after six days in the hospital she developed throm-bophlebitis (a blood clot) which produced pain and swelling, but which subsided within a few days; she also received contusions and a sprained right hip with sprained lumbodorsal and lumbar spines; there was pain in the right groin which caused buckling in the right knee; there was evidence of osteochondritis (a roughening of the back of the surface of the patella, or kneecap) ; and she experienced pain for several months. After the accident she was only able to do the lighter housework and was not able to fully resume church work in which she has been active prior to the accident. In accordance with the well-settled jurisprudence to the effect that awards made in similar cases should be considered by the courts so that, within the limits permitted by particular states of facts, a degree of uniformity will be maintained to the end that awards will not be out of all proportion one with the other (see Landry v. Southern Farm Bureau Casualty Ins. Co., La.App., 125 So.2d 474), we conclude that an award of $8,000 to plaintiff, Mrs. A. G. Broussard, is adequate and not excessive.
The judgment of the trial court is amended so as to increase the award in favor of Mrs. Aglia G. Broussard from $4,000 to $8,000 and in all other respects same is affirmed.
Amended and as amended affirmed.