CULPEPPER, Judge.
Plaintiffs seek damages for the wrongful death of their mother, Mrs. Albert Ferry, who was struck by an automobile driven by Miss Rachel Ann Lambert and insured by the defendant, Hardware Dealers Fire Insurance Company. From a judgment for plaintiffs in the sum of $5,000 (the maximum coverage) defendant appealed.
While much of the evidence is vague and conflicting, certain basic facts are proved.
On July 21, 1967, around 9:30 a. m., Mrs. Ferry, an elderly woman, attempted to cross Louisiana Highway 1 in front of her country home. She narrowly avoided being struck by one oncoming vehicle, and was struck by the second vehicle, driven by Miss Lambert.
Louisiana Highway 1 runs generally east and west. Both automobiles involved herein were proceeding in an easterly direction. Mrs. Ferry began crossing from the south *166 shoulder toward the north. The point of impact between the Lambert vehicle and Mrs. Ferry was established as being somewhere in the left (passing) or north lane of traffic. Mrs. Ferry was struck by the left rear door of the four-door Lambert vehicle and was thrown thirty-nine feet from where the investigating officer estimated the point of impact to be. The Lambert vehicle left seventy-four feet of skidmarks up to the vicinity of the impact and came to rest facing northwest, partially on the south shoulder of the road.
The investigating officer believed that the skidmarks left by Miss Lambert before impact were completely in the north or passing lane of Highway 1. He concluded that the accident was unavoidable. Plaintiff, Mr. Greely Ferry, testified that he later returned to the scene of the accident with the police officer to re-examine the skidmarks of the Lambert vehicle, and he noticed that the skidmarks were broken. He admitted that it was quite possible that the left rear of the Lambert vehicle might have gone off the highway pavement onto the north shoulder before the impact.
The only other substantial evidence relative to the question of Miss Lambert’s negligence was testimony of Mrs. Willis and Miss Lambert.
Mrs. Willis testified that she was proceeding in an easterly direction on Louisiana Highway 1 and that she noticed what she later determined to be the Lambert vehicle following her for some distance. Mrs. Willis estimated her speed between SO and 55 miles per hour. She stated that when she came near the home of Mrs. Ferry she noticed Mrs. Ferry near the roadway. Mrs. Willis first believed Mrs. Ferry would not attempt to cross the highway. Mrs. Ferry, however, proceeded onto the highway into the path of Mrs. Willis’ vehicle when Mrs. Willis was only about seventy feet from Mrs. Ferry. Mrs. Willis then braked her vehicle “severely” but remained in her lane of travel. She testified that Mrs. Ferry proceeded in front of her vehicle to about the center of the highway, as her vehicle passed in the right-hand lane. Mrs. Willis apparently did not leave any skidmarks, and it was unnecessary for her to completely stop her vehicle to avoid striking Mrs. Ferry. After this close encounter, Mrs. Willis continued down the highway until she heard the screeching of brakes behind her. Mrs. Willis did not, however, see the impact.
Miss Lambert testified that she had been following the Willis vehicle for a “couple of minutes”, but did not intend to pass her.[1] She maintained that she had seen Mrs. Ferry on the side of the road some distance ahead, but did not know that she might try to cross the highway. She heard Mrs. Willis blow her horn to try to warn Mrs. Ferry, but the decedent kept on walking toward the pavement. Then Mrs. Willis applied her brakes and swerved her vehicle somewhat to the left over the center line of the highway, thereby passing to the left (north) of Mrs. Ferry. (Of course, this contradicts Mrs. Willis who says she passed to the south of Mrs. Ferry.) When Miss Lambert saw the Willis vehicle suddenly slowing, she also immediately applied her brakes and because of the proximity of her vehicle to the Willis vehicle, she turned into the left-hand lane of traffic, hoping to avoid both Mrs. Willis and Mrs. Ferry. Miss Lambert’s left wheels went into loose gravel on the north shoulder. She then attempted to turn her car sharply to the right. As a result of this maneuver, the vehicle went into a side-way skid in the north lane, causing her to lose control and strike Mrs. Ferry.
There is no doubt that decedent, Mrs. Ferry, was grossly negligent in attempting to cross the highway and in remaining oblivious of her surroundings. Nevertheless, the trial court held Miss Lambert had the last clear chance to avoid *167 the accident. We are of the opinion the trial court erred in this conclusion.
Our jurisprudence has developed three general prerequisites for the application of the doctrine of last clear chance. The evidence must show: (1) the pedestrian was in a position of peril of which he was unaware or from which he was unable to extricate himself; (2) the driver of the vehicle actually discovered, or should have discovered, the pedestrian’s peril; and (3) at the time the motorist discovered the pedestrian’s peril, he could have avoided the accident by the exercise of reasonable care. Campisi v. Fidelity & Casualty Company of New York, 152 So.2d 88, p. 90 (3rd Cir. 1963) and the cases cited therein. Of course, the plaintiff has the burden of proving by a clear preponderance of the evidence that all of the requisites of the doctrine are present.
In the present case, we agree that after Mrs. Ferry started walking across the paved portion of the highway, she was in a position of peril of which she was unaware. However, the plaintiffs have not proved that Miss Lambert discovered or should have discovered the pedestrián’s peril in time to avoid the accident by the exercise of reasonable care.
The trial judge made certain assumptions in his written opinion as follows:
“Again, using Miss Lambert’s testimony, the old lady walked from the south shoulder; let us assume two feet from the pavement; then across the south lane, or nine (90 feet more; then about half-way across the north lane or an additional four or four and one-half (4 or 41/2) feet, or a total distance of fifteen or fifteen and one-half (15 or 15/) feet. Assuming, because of her age, she walked at the rate of two (2) miles per hour (and witnesses were questioned as to how fast she walked, she walked at the rate of two and six-tenths (2.6) feet per second, and to walk fifteen and one-half (151/2) feet it would have taken her about six (6) seconds to walk that distance. If she walked three (3) mph, her rate would be four and one-tenth (4.1) feet per second and to cover fifteen and one-half (15/) feet, it would have taken her almost four (4) seconds. And if Miss Lambert was going fifty (50)- mph, she travelled seventy-three and three-tenths (73.3) feet per second. Therefore, according to her, she was at least two hundred ninety-three and two-tenths (293.2) feet away from the crossing scene when she first saw Mrs. Ferry start across the highway. The Court cannot see a sudden emergency, there. She, Miss Lambert, saw her in plenty time to take evasive action or to stop. The other two cars, ahead of her and closer to Mrs. Ferry, did not hit her, and they had less time than Miss Lambert.”
We are unable to agree the record justifies .these assumptions. First, when Mrs. Ferry was two feet from the pavement, Miss Lambert had a right to presume that she would remain in this position of safety and would not walk -into the path of an oncoming vehicle. McGinty v. Insurance Company of North America, 205 So.2d 170 (La.App. 2nd Cir. 1968).
Second, the record does not show that Mrs. Ferry was four or four and one-half feet into the north lane at the time of the impact. The most that can be said is that Mrs. Ferry was somewhere in the north lane of traffic.
Third, the assumptions as to time and distance made by the district judge are on the basis of a continued speed of 50 miles per hour by the Lambert vehicle. Of course, Miss Lambert applied her brakes and skidded seventy-four feet to the point of impact. This necessarily slowed her vehicle below 50 miles per hour.
Thus, we cannot assume Miss Lambert was 293 feet from Mrs. Ferry at the time Miss Lambert should have seen the decedent’s position of peril.
*168 In our view, Miss Lambert acted reasonably under the circumstances. According to the testimony of both Miss Lambert and Mrs. Willis, they had been proceeding along the highway, one behind the other, for a considerable distance at a speed of 50 to 55 miles per hour. They both saw Mrs. Ferry on the shoulder, walking toward the highway and assumed that Mrs. Ferry would stop before she reached the pavement. Mrs. Willis blew her horn to warn Mrs. Ferry, but she kept on walking. Then, when Mrs. Willis realized that Mrs. Ferry was going to walk into the path of her automobile, she applied her brakes “severely”.
Miss Lambert testified that when she saw the Willis vehicle suddenly slow down she also realized for the first time that Mrs. Ferry was going to try to cross the highway. There is no evidence to show that Miss Lambert should have observed any sooner that the decedent was going to walk across the road. Furthermore, Miss Lambert’s testimony is that she applied her brakes immediately after Mrs. Willis suddenly slowed. Here again, there is no evidence to show Miss Lambert should have applied her brakes more quickly. Miss Lambert did not know how far she was behind the Willis car when she (Lambert) applied her brakes. But, considering her testimony as a whole, she was close enough that she had to forcefully apply her brakes and turn to the left for fear of striking the Willis car.
Of course, through hindsight, we know that had Miss Lambert driven her car off the highway on the right-hand side of the road (assuming that she could have done so in safety) or had she applied her brakes and remained completely in her own lane of traffic, she may have been able to avoid the accident. However, she gave logical reasons for not taking either one of these courses. She said she did not turn to the right because there was a ditch on that side of the highway. She did not stay in her own lane of traffic because the Willis vehicle was slowing down abruptly and she was afraid of striking it. Of course, Mrs. Willis says she did not come to a complete stop but instead, after slowing to 25 or 30 miles per hour then proceeded on, so that Miss Lambert could possibly have remained in her own lane. However, in this emergency, Miss Lambert judged that the best thing for her to do was to turn to the left in order to avoid striking the Willis vehicle and in the hope that Mrs. Ferry would see the danger and stop walking across the highway. Under the circumstances, this action was reasonable.
Our jurisprudence is established that a motorist, confronted with a sudden emergency, not of his own making, must exercise only the degree of care which would be expected of an ordinary motorist under such circumstances. He cannot be held to the same cool, deliberate judgment ordinarily required where no emergency exists. Carter v. Connecticut Fire Insurance Company, La.App., 189 So.2d 724; Frank v. Hankla, La.App., 208 So.2d 538.
For the reasons assigned, the judgment appealed is reversed and plaintiffs’ suit is dismissed at their costs. All costs of this appeal are assessed against the plaintiffs appellees.
Reversed and rendered.
FRUGÉ, J., dissents for reasons that the trial Judge was correct.
On Application for Rehearing.
En Banc. Rehearing denied.
FRUGÉ, J., votes for rehearing.

. It was not pleaded or contended by plaintiffs that Miss Lambert was following the Willis vehicle too closely.